FRANCES BURNS and Another v. LUCRETIA BURNS.[1]

December 26, 1913.

Nos. 18,473—(281).

Second mortgagee without right of redemption.

1. The evidence sustains the finding that a mortgage was without consideration, and the legal conclusion that the mortgagee named in such mortgage has not the right to redeem from the foreclosure of a prior mortgage.

Deed and mortgage—exclusion of evidence.

2. Appellant and her husband made a deed to the latter's brother of land to which she held the legal unrecorded title, the husband took the deed to the brother and delivered it upon receiving a surrender of the equities of the brother to land, the legal title whereof was in appellant's

[1] Reported in 144 N. W. 761.

husband, and the balance of the agreed consideration in money, thereupon a mortgage without any consideration was executed to appellant to protect the mortgagors against their own improvidence; *held,* that it was not error to exclude evidence concerning appellant's purchase of the land so conveyed nor as to her secret instructions to her husband respecting the delivery of the deed.

**Estoppel of plaintiff.**

3. The mortgage to appellant caused no legal fraud and plaintiff is not estopped from asking its cancelation.

**Action to enjoin maintainable.**

4. Plaintiff and intervener are entitled to maintain this action by virtue of their interest in the land to which the mortgage relates.

**When right of action accrues.**

5. Plaintiff's cause of action did not accrue until appellant refused to release the mortgage or until she asserted its validity.

Action in the district court for Big Stone county by plaintiff individually, and as administratrix of the estate of Luke Burns, deceased, for an injunction to restrain defendant from redeeming from the foreclosure of a certain mortgage by virtue of a pretended mortgage for $4,500; that the mortgage be adjudged void and that defendant be held to have no right thereunder. Defendant in her answer set up a redemption from the sale, and for a counterclaim and cross bill inserted the allegations for an action to determine adverse claims. The Big Stone County Bank intervened and in its complaint set up the foreclosure of the mortgage held by it, the invalidity of defendant's $4,500 mortgage, and prayed that the mortgage be adjudged to be fraudulent and void. The case was tried before Flaherty, J., who found that the mortgage for $4,500 was void and of no legal effect; furnished no lien or basis upon which defendant could predicate a right or claim to redeem the land from the foreclosure sale, and ordered judgment in favor of plaintiff and intervener. Defendant's motion for amended findings was denied. From an order denying her motion for a new trial, defendant appealed. Affirmed.

*F. W. Murphy,* for appellant.

*Cliff & Purcell,* for respondent.

124 M.—12.

HOLT, J.

Action brought to enjoin a mortgagee from redeeming, on the ground that the mortgage was without consideration, and to have it adjudged void. Decision for plaintiff, and appeal by defendant from the order denying a new trial.

The facts are substantially these: In 1879 Luke Burns, the deceased husband of plaintiff, and his brother, Charles J. Burns, the deceased husband of defendant, each located upon 160 acres of government land in Big Stone county. Luke acquired the northwest quarter of section 34, township 124, range 45, by complying with the homestead act, and Charles the southwest quarter of the same section under the pre-emption act. In 1892 Charles obtained patent to the northeast quarter in the same section under the tree-claim act. Charles never took up his residence on the land, except such as was necessary to comply with the pre-emption law. He appears to have resided subsequent to 1882 at Stillwater, where he was engaged in business. He always owned a number of draft horses, used during the winter in logging. These were sent up to Luke in the summer to be pastured and for farm work as needed. During all the time, up to the fall of 1905, Luke farmed his own and Charles' land as one farm, planted and cared for the tree claim, and Charles came up once or twice a year when some kind of settlement of the farming operations or division of the crops was made. The inference from the record is that Luke was not thrifty, was prone to run into debt, and, having a large family, had a hard time to make both ends meet. Charles evidently assisted him both financially and otherwise. After Luke became entitled to a patent, he took up his residence on Charles' farm, namely: The southwest quarter; this continued to be his home until his death in 1910. For obvious reasons Luke, very soon after receiving the patent to his land, caused the title to be vested in his wife, who held it until 1895 when it was deeded to Charles, and he continued the record owner up to his death. In 1890 financial difficulties threatened Charles and he conveyed the southwest quarter to his brother-in-law, Lyman, who thereafter until December 6, 1905, held the legal record title, but in 1894 Lyman gave a deed to defendant which was never recorded until December

6, 1905. By deed delivered December 5, 1905, and recorded the next day, defendant and her husband conveyed the southwest quarter to Luke, and at the same time he and plaintiff gave a first mortgage to the intervener for $2,300 and a second mortgage to defendant for $4,500, both recorded on December 6, 1905. In January, 1909, Luke and his wife conveyed, with warranty against encumbrances, the southwest quarter and some personal property to O'Brien Land Co. for $6,500. It was agreed that the land company should pay the first mortgage of $2,300 to the intervener and the balance of the purchase price to the grantors, when the $4,500 mortgage held by defendant was released. Defendant refused to release. Thereupon the first mortgage was foreclosed by the intervener at the request of plaintiff, with the consent of the land company, for the purpose of passing title to the intervener for the benefit of plaintiff and her grantees; it being understood between the parties that when the title was thus perfected, on the assumption that defendant would or could not redeem, plaintiff was to receive the balance of the purchase price. Under this agreement the land was bid in by intervener. But contrary to expectation defendant attempted to redeem, and this action was brought by plaintiff personally and as administratrix of her husband's estate to prevent redemption.

Plaintiff's claim is that defendant's mortgage was wholly without consideration and was given and accepted solely for the purpose of protecting the mortgagors against their own imprudent ways of contracting debts, therefore it cannot serve as a basis for redemption and may be removed as a cloud on the title. It is apparent that the trial court concluded that, notwithstanding the title to the north half of the section had stood of record in Charles for more than 10 years prior to December 5, 1905, Luke in fact owned the west 160 acres and an undivided half of the east 160 acres, the tree claim; also that Charles had always up to that date continued to be the true owner of the southwest quarter, although the record title stood in Lyman and defendant had the unrecorded legal title. The evidence disclosed clearly that no matter who held the paper title or record title to these three quarter sections of land, Luke was the actual owner of the northwest quarter and Charles of the southwest quarter, while the

northeast quarter, or tree claim, was joint property, and that such ownership was continuous from the time the land was entered up to December 5, 1905. Luke during all the time farmed the cultivated parts of all the tracts. Charles and Luke were the only ones who concerned themselves about the lands or crops. Defendant does not claim that she ever gave any directions concerning the land during the 11 years the paper title rested in her; or shared in the crops, in fact, she said she never had any business with Luke and did not know how affairs stood between the brothers. It is true she wished their business relations terminated, evidently because she did not consider them profitable to her husband.

In this situation no error is perceived in the admission of the testimony of Thomas Burns and the O'Briens as to the settlement and division of the property between Luke and Charles on December 5, 1905. From their testimony the mind is forced to the conclusion that Charles held the title to the northwest quarter in trust for Luke and that the latter equitably owned a half interest in the tree claim; that the brothers wished to divide up the tree claim and settle all matters between them; that to accomplish this to the best advantage they traded the farms, Luke getting Charles' original farm with buildings and Charles receiving Luke's homestead claim and his interest in the tree claim; and by so doing sufficient money could be raised by a first mortgage to pay Luke's debt to Charles and the $700 on Luke's homestead, thus giving Charles the north half of the section free from encumbrances. This arrangement was fully carried out. And we might say, here was an executed parol trust. Wolford v. Farnham, 44 Minn. 159, 46 N. W. 295. If the southwest quarter was in reality the land of defendant's husband and she let him take the deed for the purpose of disposing of it to Luke, and he did so, receiving as the full agreed consideration Luke's homestead, and interest in the tree claim, then the additional mortgage was without consideration.

Defendant also claims that the court erred in excluding evidence as to what she paid for the southwest quarter, not that Lyman got anything, but that she had received $600 from an estate which Charles had invested in lots and afterwards sold using the money and allow-

ing her this land; also in rejecting testimony of her instructions to Charles when he went up to settle with Luke. We do not think there was prejudicial error in either ruling. The ownership of the land was not a direct issue in the case, at most it was a circumstance throwing light on the proposition whether defendant's mortgage was without consideration. She admits sending her husband to Luke with a deed and that no set purchase price was fixed. He saw fit to accept the real estate of Luke and the proceeds of the first mortgage in full payment for the deed. She now as sole heir of her husband has what Luke and plaintiff parted with. Her secret instructions to her husband as to the deal cannot bind plaintiff or Luke. And in that situation defendant ought not to be heard to complain even if she, and not Charles, had been the true owner of the land. She has succeeded to all that Luke parted with for the land according to the agreement of her husband, and this second mortgage which he agreed should be held merely as a protection to Luke, without any consideration whatever, should also be considered so held by her.

As before indicated the real issue in the case was whether defendant's mortgage was without consideration; and if it was, the further legal question, does it give defendant the right to redeem from the foreclosure of the first mortgage? The court's finding that it was without consideration is amply supported. There is evidence, not only of the actual agreement between the brothers, but that Charles first tried to induce the brother Thomas to take the mortgage so as to prevent Luke from obtaining credit, to serve as a "cloak," as he stated, and when Thomas refused he concluded to make it out to defendant; that there was no consideration for it whatever, the full purchase price of the land being otherwise paid as above stated; that no interest was ever paid or demanded on the mortgage, and that defendant did not know of its existence until after Charles' death, when it was found among his papers. Her own letter when requested to release the land contradicts in a measure her present claim and indicates that she knew nothing of the origin of the mortgage.

But it is claimed plaintiff has no standing in court, for the reason that the court found that it was also the purpose to put Luke's property beyond the reach of his creditors, hence fraud taints the trans-

action in which plaintiff and Luke took part. The scheme was not legal fraud on future creditors. There was no evidence of existing creditors nor, indeed, of subsequent. Neither findings nor evidence create an estoppel against plaintiff. Anderson v. Lee, 73 Minn. 397, 76 N. W. 24, is authority for plaintiff's right to have the mortgage cancelled. Again, it is urged no right exists in either plaintiff or intervener to equitable relief. Plaintiff and her husband conveyed warranting against this encumbrance, she personally and as administratrix is unable to get the full purchase price until this cloud upon the title is removed. We think the action may be maintained by plaintiff and also by the intervener who, under an oral agreement with plaintiff, which defendant has no right to question, foreclosed the mortgage and became the purchaser at the sale in order to perfect title in plaintiff's grantees, on the theory that defendant's mortgage was void and no redemption would or could be made thereunder.

Defendant makes the point that the statute of limitations has run, reasoning thus: The mortgage was a scheme to defraud of which plaintiff was cognizant when it was given and the action then accrued. Not so, the cause of action arose when defendant refused to release and sought to assert a right under an invalid instrument. Furthermore, the action involves removing a cloud upon title and clearly is not barred.

We do not question the authorities cited by appellant, but, to the facts as here disclosed by the evidence and findings, they are not applicable, and hence fail to convince us that any error prejudicial to appellant is in the record. A criticism of the finding to the effect that the settlement of December 5, 1905, settled and adjusted not only the affairs and property of Luke and Charles but also of plaintiff and defendant, is without merit, for the transaction related to land. Plaintiff had an inchoate right to the north half of the section, and defendant at least the same right in the southwest quarter.

No useful purpose would be served by any further discussion of the many errors assigned. An attentive examination of all the testimony leads to an abiding conviction in the correctness and justice of the rulings and decision of the learned trial court.

Order affirmed.